v. Riyad Bazzi and Suad Bazzi. Thank you, Your Honors. May it please the Court. I'm Adam Ford on behalf of Appellant SBR. Your Honors, this appeal I think really hinges upon one question, but it's a question that I think has profound implications for our country's immigration laws. And the question that I think really decides this case is, can an immigrant, a person attempting to obtain naturalized U.S. citizenship in our country, do so without any intent to stay here, without any intent to make America his or her home? And the District Court, we think, committed error by finding that that was possible. And here's why we're requesting a reversal of that. First off, with respect to the immigration law, and I'm going to get into the statutory language in a moment, but I think the laws have to be read in context, right? Within the sort of, what are the policy goals? What are we trying to do with our immigration laws? And without getting on my soapbox, we're a nation of immigrants, right? But what type of immigrants? The type of immigrants that want to come here and make a better life for themselves, for their family, for their children, for their parents, want to positively contribute to our great nation, those are the types of immigrants that we are. And our laws, of course, are written to encourage those type of people to come here. And so, now it's with that background that we look at the actual statutory language in terms of how one becomes a naturalized U.S. citizen, and that's found in 8 CFR 316.2 and 5. And subsection 2 sets forth the requirements for becoming a naturalized citizen. I think four or five of them deal with the residency requirement. You have to be a resident here. You have to reside here continuously for Correct. Yeah, absolutely. You have to reside. You have to reside. And why does that amount to an intention to establish domicile? After all, you know, somebody who is a Californian who's arrested in New York and spends years in a New York prison still has domicile in California, even though they're required to stay in New York. Why not apply the same principle here? I grant you there's an irony here. You want to be a U.S. citizen, you want to live someplace else, but that's a requirement that you be here. How can that requirement establish your intention? Well, because the easy answer is because Congress has said so, and Congress has said so. You could correct me. To be a permanent resident, you have to be here a certain amount of time, but I don't think there's a particular requirement that you say, I'm intending to stay after I'm a If you apply that, wouldn't there be some constitutional difficulties? Once someone becomes a citizen, they're not free to leave the country and or establish a domicile elsewhere? No, of course. So on day two, I become a United States citizen on September 1st, 2022. Can I move to Canada on September 2nd and establish a domicile there? You can. You can, but you can. So it's a question of intention. Isn't that the case? Is that? Just answer my question. Is it a question of intention? It is a question of intention after you've become a U.S. citizen, the day after when you decide. Don't fight the hypothetical, Counsel. I'm not trying to. On September 1st, I became a United States citizen. On September 2nd, I decide to move to Canada and live there and establish my domicile there. Can I do that? Under the law, you may. However, what Congress has said in subsection 5, which is the definition, it's the definition of residence, right? And the way they define residence is they say, buy your domicile. I know there's a comma. I'm going to get to that. I'm going to get to that. I'll get to all of this. But Congress embedded in the actual statute, the requirement of residence is that your residence is your domicile and your residence must be in the United States. Sure, but residence is a question of intention as is domicile. Yes. Is it not? Residence is not a question of intention. Domicile is a question of intention. Well, I generally intend to reside in Geneseo, New York, and I'm domiciled there too, because I'm in control of my life. But in any event, you still haven't addressed the question. If I decide to move and make my domicile elsewhere outside the United States, there's nothing that precludes me from doing that the day after I become a citizen. Yes, but this case, we're talking about the day of, right? Because what we're saying, the argument is, on the day that an immigrant becomes a naturalized U.S. citizen, Congress has determined that their domicile is in the United States. This was before you- It must be. Let's go, let's talk with facts here. They became citizens before this action was commenced. Is that your case? That's right, July 2008. And the action was commenced in September? Correct. So two months later? Yes. All right. They're capable of changing their domicile in two months, are they not? Absolutely. Okay. And the district court made findings that their intention was to have Lebanon be their domicile. The problem was that what the district court found was that they were never domiciled in New York, even on the day that they became citizens. Well, that might be a problem with their citizenship, but it's not a problem with their domicile, is it? Yeah, but it's a problem with everything, because if, while they were applying for citizenship- So a requirement for citizenship then becomes a cast-iron determination of domicile. That is what Congress has written in the statute. That's not my argument. Well, maybe we might disagree with you. So the question is, how far does that requirement reach? Is that it? That's what we have to decide, right? I'm not certain I understand that question. How do you decide whether you're right about what the implications of Congress's expression with regard to where someone has to reside at the time that they become a citizen? I would phrase it not as me, but what the court has to decide is when Congress writes 8 CFR section 316.5- Congress, by the way, did not write 8 CFR. The executive department did. I apologize. That's right. It's the word of the executive, for which we will give some deference. Because you don't have a citation to a statute, do you? I don't have a citation to the statute. I have a- Because you've been talking about Congress, and now you mean the president. I apologize. That was my error. Let me ask you a question. There's a case that wasn't focused on by the District Court of the Parties, and I think it is important. In a case called Taggart, if you're familiar with it, in 2020, you had an Israeli citizen who was a permanent resident of the United States, domiciled in New York, all right? So he's in New York, domiciled in New York, but he's a permanent resident alien. What we said in that case was for purposes of diversity jurisdiction, a permanent resident is always an alien for diversity purposes. We conclude Taggart is an alien for purposes of diversity, even though he was domiciled in New York. So my understanding of that case that says that while the Bazzi's were permanent resident aliens, wherever they're staying, whatever their intent is, they're considered aliens for purposes of diversity jurisdiction, and the only relevant consideration in this case is in the period between the day they became citizens and the day of the filing of the lawsuit, where was their domicile during that period, right? Or am I missing something? Well, no, this is exactly the heart of the matter, which is that the district court judge should have presumed that they were domiciled in New York in July of 2019, and that would have- Why? Why would there be a presumption of that? I understand that. I just told you that our case presumes otherwise. Our case law, this case presumes during your whole period of permanent resident alien, you are an alien of the foreign country. Even if you're physically here. Right, and I think that respectfully, I think that conflicts with the CFR code. I don't know what it conflicts with, but I'm telling you what the law is of the circuit. This is the law of the circuit, and it suggests that whatever the requirements are for immigration purposes are not the same for purposes of assessing diversity. That's what I think this case suggests, that it's two different things. Or am I missing something? Well, I- Clearly, what I just, the holding of that case is not looking at what the immigration requirements are. Well, in this case, and I'm blanking on the facts of the Taggart case, but certainly- It's an Israeli citizen who's living in New York, and we said for diversity purposes, foreign citizens for the purpose of diversity. I don't know why that wasn't focused on, but that's why I'm asking about it. I think it's an important case to bring up in the context of here. I think so, too. The other case that wasn't actually brief, but I wanted to raise was actually the third circuit case, which is sort of the inverse, which is El Gawi, and I can provide the- It's actually 170 Fed APX 231. In that case, you actually, which is explicitly discussing 316.5 and how to interpret it, and what they say clear as day is that residents, when you're attempting to become a U.S. citizen, which I think might be the difference in the Taggart case if he was just a permanent resident. Because if you're becoming a permanent resident, that's sort of different than when you- There's related, obviously, but you eventually become a citizen. And when you're dealing with, on the day of citizenship, what you have to affirm, you have to affirm that you've resided in the United States. Why can't you have more than one residence? I mean, the fortunate few among us have two, three, five residences. And it's all over the world. Of course, and you can have as many residences as possible. So you can be a resident of New York, and at the same time be a resident of Beirut, and Bali, and Saint-Tropez, and- But the Supreme Court, since at least 1938, has said you can have many residences, but only one domicile, right? That's correct, but you also have to be a resident for five years in the United States, but that doesn't mean that you can't have other residences. And at one of those residences, you may be maintaining your domicile. But this is where I'm going with the El Gawi case, which is they say, and again, going back to the Code of Federal Regulations, residence is defined as your domicile. So when you're attempting to become a naturalized U.S. citizen, the code, right? And domicile are the same. They're interchangeable. All right. We understand, Your Honor. Thank you. Okay. Mr. Krieger. Thank you. Your Honor, it's Paul Krieger from Krieger-Kimen-Lewin for Appellees Suad and Riyad Bazzi. I represented them in front of the District Court as well. So the question here is whether Judge Committee, the District Court, made a factual legal error and whether his decision should be affirmed, of course. And the simple answer is that he did not. Domicile, as Your Honors were getting at earlier, is about a question of intent, right? It's a factual inquiry that requires a District Court to make factual findings and assess credibility. And here, the District Court heard testimony from six people, including five members of the Bazzi family, found them credible, explained there were no inconsistencies, and determined that the Bazzi's remained domiciled in Lebanon throughout the pendency of the litigation. And to overturn this determination, the court will have to find the District Court committed a clear error. What Mr. Ford was just putting forth is a novel argument that has no support in the case law. It's unprecedented and unjustified for various reasons. Despite the fact that determining domicile is an intent-focused inquiry, and not one single factor outweighs any of the other, including the fact that the Bazzi's were residing in Brooklyn at the time that they applied for citizenship, and the fact that they applied for citizenship. So a couple points on that regulation. First, as Judge Walker was pointing out, it's not a statute. It's a regulation. And the Department of Homeland Security can't control what qualifies as domicile for the purposes of subject matter jurisdiction by the courts. And that's been clear for decades. Second, that regulation clearly says it's for the purposes of this chapter, right? So the definition of domicile in that regulation is for the purposes of the chapter. It has nothing to do with subject matter jurisdiction. That the courts regularly determine are multifactored tests. And one thing that didn't come up in Mr. Ford's argument earlier is that that regulation specifically says domicile is where you reside without regard to intent. And as the court knows, intent is the touchstone of the analysis of where someone's domiciled in the context of subject matter jurisdiction. And here, Judge Committee, after hearing, taking into account all the factors, found that the Bazis were domiciled in Lebanon, intended to return to Lebanon, even on the day they applied and received citizenship. So that regulation doesn't control here at all for a variety of reasons. One thing, just in terms of a piece of evidence that the district court did not address. In the opinion, the district court said there's no need to consider the significance of two things. The sale of the Brooklyn apartment and the fact that they had purchased round-trip tickets to return to New York in October of 2019. Why should you not consider that? Isn't the fact that someone purchased a round-trip ticket potentially an indication that they intended to return to New York and be in New York and only changed their mind later after the lawsuit was filed? So why did the district court say, I don't need to consider that? There might be explanations, the other evidence might outweigh it, but I was a little confused by the idea that you wouldn't need to consider that. Well, I think what Judge Committee said was that the decision not to use their purchased plane ticket was not considered. I don't think he said he didn't consider the fact of the purchase of the ticket at all in his decision. And I would suggest, Your Honor, that the purchase of the ticket, if anything, corroborates the fact that the Basis always intended to return to Lebanon permanently after they got their citizenship. As the record was clear, the Basis purchased that ticket to return to Lebanon the day they received notice that they were going to have their citizenship hearing or swearing in. So that was two or three months before the complaint was filed. They then used that ticket to go to Lebanon and they didn't return, right? They didn't use the return ticket, which was two months after they arrived in Lebanon. As the testimony from, I believe, Suad Basi made clear, they bought a round trip ticket because they never testified or believed they were never going to return to New York. They said they were going to return to visit. Their daughters lived in the United States. So the fact that they purchased a round trip ticket and they didn't use it, I think that the fact that they purchased that ticket, the fact that they returned, all those facts were considered by the court. The language that he says in the opinion is the decision not to use it, not to use it, in October 2019, after the complaint was filed, was not something that he said that he consented. He didn't credit their explanation for why they purchased it and then didn't use it. I understand what you're saying, but I would have expected that he would have said, with respect to the ticket, the purchase of the ticket, I credit their testimony that this was the reason and not some intent to remain in the United States. Yeah, I think he did credit their testimony on that. I think he- Where did he do that? Well, he credited their testimony in basically every respect. I think what he's saying here is that he didn't evaluate their testimony about the decision not to use the ticket. The fact that they bought the round trip ticket, why they bought the round trip ticket, what it meant, I think he did credit. Where did he say I credit their testimony in every respect? I didn't see that either. Well. I don't, I didn't see that. I mean, obviously, when it comes to documentation, it's important. He didn't use the word in every respect. That's a fair point, but he certainly credited their testimony, and he found it corroborated. I don't know if you're familiar with this Taggart case, because it wasn't focused on in the briefs, but I just want to make sure if we're articulating the law in this area that we're not looking at things that have already been decided by the court, so that case seems to suggest to me that if you're a permanent resident, during that period of time, wherever you are physically, you are considered for diversity purposes a foreign citizen. I don't know if you want to comment on that. Well, I haven't, honestly, your honor, I haven't read the opinion. I haven't relied on it in our briefs, but it sounds right to me. The holding is consistent with our position, and I think it's also consistent with the idea that the fact that immigration definitions of domicile don't trump subject matter definitions of domicile. But if that's the holding of that case, then what we looked at here is during the period from citizenship to the filing of the complaint, what was their intent? And obviously, you can look at what they did prior to that to inform your findings with respect to that period. And the district court covered the whole period, obviously, but. Yep. All right. Well, if the court has no further questions, I'll rest on our briefs. Thank you, your honor. Thank you. Okay, Mr. Ford, you have two minutes. Thank you, your honor. Just a couple of quick points. In terms of the statement that our position is novel and finds no basis in the case law. I do think that there's been two divergent decisions at the district court level, specifically the seats case, which was in our briefs and discussed. And in that case, which was somewhat, well, I think almost identical to ours, Judge Patterson found that the statement, the sort of self-serving statements, that someone never resided, they used the residing, not domicile language in that case. In the United States, during the time that they were becoming citizens, was inherently incredible, because they had to have been here. They had to have been residing here, which is, again, defined as domiciled. Now, in the lower decision, a judge committee said, well, that case was different because the judge found the testimony of those individuals not credible. But where he found it was not credible was the exact point that judge- My recollection is that it was almost, I think it was exclusively focused on the statements of both the gentleman and I think his wife as well. And they tried to say neither of them had resided in the United States during this time period. And Judge Patterson said, well, that can't be possible because, you know, and he said the same thing that Your Honor suggested earlier, which is, well, then there's a problem with the immigration application because that would be untruthful, which I think was the same argument here. But our, you know, the case law is very strong that district court judges are not supposed to overly credit self-serving testimony, particularly with individuals who have two or multiple homes, because you can always get on a stand and say it was my intent to go somewhere else. And so there's not supposed to be this reliance on the self-serving testimony and instead on the evidence. And as Your Honor pointed out, the only evidence really at issue here was these round-trip plane tickets. No, no, I mean, the judge went through their taxes, their family ties, they owned a car in Lebanon, they reviewed their identification cards, insurance. I mean, it wasn't like they were just, their statements, that it was all this corroboration that was the basis for finding them credible. And you're saying all that should be out the window, we should just look at immigration definitions. Well, I mean, our real argument is that the determination should have been made that they were domiciled in New York in July of 2019, and that changes the entirety of the rest of the hearing. Right, no matter what the evidence is, what their actual intent was. Even if the intent is overwhelming that they were returning to Lebanon, you're saying it doesn't matter. I think as a matter of law, and I know it's just, I understand it's the CFR, but the idea that naturalized, people who want to become naturalized citizens here can come. And we should encourage them to come and simply leave on the next day, simply so they have ease of travel is an anthem to our views. All right, thank you both for your decision, have a good day. Thank you. That completes the business of the court today, but thanks to Ms. Speer, I'll ask that she return to court. Court is adjourned.